MARCOS D. SASSO (SBN 228905)
sassom@ballardspahr.com
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorneys for Defendant
BRIDGECREST CREDIT
COMPANY, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHOLINE FERNANDEZ and RONALD FERNANDEZ, on behalf of themselves and members of the general public,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGECREST CREDIT COMPANY, LLC, an Arizona limited liability company; and DOES 1 through 25, inclusive,<br><br>Defendant. | Case No. 5:19-CV-00877 MWF (SHKx)<br><br>[Assigned to the Hon. Michael W. Fitzgerald]<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT BRIDGECREST CREDIT COMPANY, LLC TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Hearing**:<br>Date:   September 30, 2019<br>Time:   10:00 a.m.<br>Courtroom: 5A<br><br>Trial Date: None<br><br>[Declaration of Paul Beinlich IV and Request for Judicial Notice filed and [Proposed] Order lodged concurrently] |

DMEAST #38531187 v6

MOTION TO COMPEL ARBITRATION AND STAY ACTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 30, 2019, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Michael W. Fitzgerald in Courtroom 5A of the above referenced Court, located at 350 West First Street, Los Angeles, CA 90012, defendant Bridgecrest Credit Company, LLC ("Bridgecrest"), will and hereby does move pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA"), for an Order compelling plaintiffs Antholine Fernandez and Ronald Fernandez ("Plaintiffs") to arbitrate their claims in this action and to stay the action pending the outcome of arbitration proceedings.

This Motion is made on the grounds that a valid and enforceable agreement to arbitrate (the "Arbitration Agreement") exists between the parties; that the agreement encompasses all of Plaintiffs' claims; that pursuant to Section 4 of the FAA, 9 U.S.C. § 4, Plaintiffs must arbitrate all of their claims as required by the Arbitration Agreement; and that the instant action should be stayed pursuant to Section 3 of the FAA, 9 U.S.C. § 3, pending the completion of arbitration.  This includes Plaintiffs' Fifth Claim purporting to seek public injunctive relief under California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* ("UCL").  It is plain on the face of the Complaint that the Fifth Claim does not satisfy the threshold pleading requirements for seeking public injunctive relief under California law because it seeks relief only on behalf of certain Bridgecrest customers, not on behalf of the "general public."  Moreover, the FAA governs the issue of the arbitrability of public injunctive relief claims.

Because Plaintiffs' Fifth Claim does not even state a facial claim for public injunctive relief under California law, this Court will not need to address Plaintiffs' anticipated reliance on *McGill v. Citibank*, 2 Cal. 5th 945 (2017), and *Blair v. Rent-A-Center, Inc.*, No. 17-17221, 2019 U.S. App. LEXIS 19476 (9th Cir. June 28, 2019).  In *McGill*, the California Supreme Court held that a provision in an arbitration agreement precluding the award of public injunctive relief is

1

MOTION TO COMPEL ARBITRATION AND STAY ACTION

unenforceable under California law (the "*McGill* Rule"). In *Blair* and two companion cases, *Tillage v. Comcast Corp.*, No. 18-15288, 2019 U.S. App. LEXIS 19496 (9th Cir. June 28, 2019), and *McArdle v. AT&T Mobility, LLC*, No. 17-17246, 2019 U.S. App. LEXIS 19495 (9th Cir. June 28, 2019), the Ninth Circuit held that the FAA does not preempt the *McGill* Rule.

Even in the unlikely event that this Court concludes that Plaintiffs' Fifth Claim states a viable claim for public injunctive relief under California law, it must still compel arbitration of Plaintiffs' individual claims in the First through Fourth Claims, and stay litigation on those Counts pending the completion of arbitration. Under the FAA, arbitration agreements must be strictly enforced even if the result is that some claims proceed to arbitration while other claims remain in court. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("The relevant federal law [the FAA] *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis by the Court); *KPMG LLC v. Cocci*, 132 S. Ct. 23, 24 (2011) ("The Act [the FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation .… A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[t]he [FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and 'not substitute [its] own views of economy and efficiency' for those of Congress.") (citation omitted).

If this Court addresses the arbitrability of Plaintiffs' Fifth Claim, it will be confronted with the issue of whether the FAA preempts the *McGill* Rule. Importantly, on August 9, 2019, Comcast and AT&T filed petitions for rehearing with the Ninth Circuit in the *Tillage* and *McArdle* cases. Request for Judicial

Notice ("RJN") Exs. 1, 2.  (In *Blair*, the parties have agreed to stay the appeal pending approval of a settlement.)  It is anticipated that one or both of those companies will file a petition for a writ of certiorari with the United States Supreme Court if their rehearing petitions are denied, and it is reasonably probable that the Court will grant review given its longstanding interest in FAA preemption issues.  Accordingly, if this Court reaches the FAA preemption issue, it should stay Plaintiffs' Fifth Claim pending the final disposition of the Comcast and AT&T appeals, including review by the Supreme Court.  This Court has the discretion to stay this case if doing so would "simplify[] . . . questions of law . . . ." *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  Such a stay would be warranted here because there is a compelling argument that the Ninth Circuit's FAA preemption analysis is contrary to Supreme Court precedent and a stay would simplify the issues, allowing the parties (and the Court) to know, with certainty, what law governs the enforceability of Plaintiffs' Fifth Claim under the FAA.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Paul Beinlich IV, and exhibits thereto, all papers and pleadings on file in this action and upon such other and further evidence and argument as may be presented to the Court in connection with this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 7, 10 and 19, 2019.

DATED:  August 19, 2019

Marcos D. Sasso
BALLARD SPAHR LLP

By:  */s/ Marcos D. Sasso*

Marcos D. Sasso

Attorneys for Defendant
BRIDGECREST CREDIT COMPANY, LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ..................................................................5

    A.    Plaintiffs' Account And The Arbitration Agreement ...........................5

    B.    The Allegations Of The Complaint.......................................................7

III.  ARGUMENT ..........................................................................................8

    A.    Plaintiffs' Claims Are Subject To Binding Arbitration Pursuant
        To The Arbitration Agreement. ...........................................................8

        1.    The Arbitration Agreement Is Valid...........................................8

        2.    Plaintiff's Claims Fall Squarely Within The Arbitration
               Agreement's Scope.................................................................11

        3.    Plaintiffs' Claims Must Be Arbitrated on an Individual
               Basis........................................................................................13

    B.    The Action Should Be Stayed.............................................................16

        1.    The Action Should Be Stayed Under Section 3 of the
               FAA. ......................................................................................16

        2.    If This Court Reaches the FAA Preemption Issue Posed
               by Plaintiffs' Fifth Claim, It Should Apply A
               Discretionary Stay Of The Fifth Claim Pending
               Completion Of Appeals In Tillage And McArdle...................17

IV.   CONCLUSION .....................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995) ................................... 9

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) ....................................................... 10

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................................... 4

*Anderson v. Delta Funding Corp.*,
316 F. Supp. 2d 554 (N.D. Ohio 2004) ............................................................... 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ......................... *passim*

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) .................................. 11

*Balar Equip. Corp. v. VT Leeboy, Inc.*,
336 F. App'x. 688 (9th Cir. 2009) ..................................................................... 16

*Blair v. Rent-A-Center, Inc.*,
No. 17-17221, 2019 U.S. App. LEXIS 19476
(9th Cir. June 28, 2019) .............................................................................. *passim*

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ................................ 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......................................................................... 10

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) .................................................................................. 12

*Collins v. Burlington N. R. Co.*,
867 F.2d 542 (9th Cir. 1989) ............................................................................ 16

*CompuCredit Corp. v. Greenwood*,
132 S. Ct. 665, 181 L. Ed. 2d 586 (2012) ........................................................ 10

*CompuCredit Corp. v. Greenwood*,
  565 U.S. 95 (2012) ............................................................................... 4

*Coneff v. AT&T Corp.*,
  673 F.3d 1155 (9th Cir. 2012) ........................................................... 10

*Credit Acceptance Corp. v. Davisson*,
  644 F. Supp. 2d 948 (N.D. Ohio 2009) ................................................ 9

*Croucier v. Credit One Bank, N.A.*,
  No. 18-cv-20 MMA (JMA), 2018 WL 2836889
  (S.D. Cal. June 11, 2018) .................................................................... 15

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .............................................................................. 3

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg.
  Contractor, Inc.*, 952 F.2d 1073 (9th Cir. 1991) ............................... 12

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ............................................................................ 13

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ......................................................... 1, 4, 10, 17

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ............................................................. 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ..................... 11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ...................................................................... 4, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .............................................................................. 13

*Johnson v. JP Morgan Chase Bank, N.A.*,
  No. EDCV 17-2477 JGB (SPx), 2018 U.S. Dist. LEXIS 167272,
  2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ................................ 2, 15

*Kilgore v. KeyBank, N.A.*,
  673 F.3d 947 (9th Cir. 2012) ............................................................. 10

*Kim v. Tinder, Inc.*,
    No. 18-cv-03093 JFW, 2018 WL 6694923
    (C.D. Cal. July 12, 2018)......................................................................... 15

*KPMG LLC v. Cocci*,
    132 S. Ct. 23 (2011)........................................................................... 3, 10

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019)........................................................................4, 10

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ..........................................................4, 17

*Marmet Health Care Ctr., Inc. v. Brown*,
    132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) ........................................... 10

*Marmet Health Care Ctr., Inc. v. Brown*,
    565 U.S. 530 (2012) ...............................................................................4

*McArdle v. AT&T Mobility, LLC*,
    No. 17-17246, 2019 U.S. App. LEXIS 19495
    (9th Cir. June 28, 2019).................................................................*passim*

*McGill v. Citibank*,
    2 Cal. 5th 945 (2017)....................................................................*passim*

*McGovern v. U.S. Bank N.A.*,
    362 F. Supp. 3d 850 (S.D. Cal. 2019) ............................................2, 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) ................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ....................................................................... 3, 9, 11

*Perry v. Thomas*,
    482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) ......................9

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) .....................9

*Rappley v. Portfolio Recovery Assocs., LLC*,
    No. 17-cv-00108-JGB, 2017 U.S. Dist. LEXIS 144182,
    2017 WL 3835259 (C.D. Cal. Aug. 24, 2017)..................................... 15

*Sheffer v. Samsung Telecomms. Am., LLC¸*
    No. CV 13-3466-GW AJWX, 2014 WL 792124
    (C.D. Cal. Feb. 6, 2014) ...................................................................... 16

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999) ........................................................... 11, 12

*Southland Corp. v. Keating,*
    465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) ............................. 10

*Sponheim v. Citibank, N.A.,*
    No. SACV 19-264 JVS (ADSx), 2019 U.S. Dist. LEXIS 100857
    (C.D. Cal. June 10, 2019) .............................................................. 2, 14

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) .................. 10

*Thomas O'Connor & Co. v. Ins. Co. of North America,*
    697 F. Supp. 563 (D. Mass. 1988)......................................................... 9

*Tillage v. Comcast Corp.,*
    No. 18-15288, 2019 U.S. App. LEXIS 19496
    (9th Cir. June 28, 2019)............................................................. *passim*

*Volt Info. Sciences, Inc. v. Bd. of Trustees,*
    489 U.S. 468 (1989) ...................................................................... 9, 13

*Wright v. Sirius XM Radio Inc.,*
    No. SACV 16-01688, 2017 U.S. Dist. LEXIS 221407
    2017 WL 4676580 (C.D. Cal. June 1, 2017).................................... 2, 15

**Statutes**

Bus. & Prof. Code § 17200, *et seq.* .......................................................... 1

Cal. Civ. Code § 1785, *et seq.* ................................................................... 8

Cal. Civ. Code § 1788, *et seq.* ................................................................... 8

Cal. Civ. Code § 2981, *et seq.* ................................................................... 8

Cal. Comm. Code §§ 9614, 9616 .............................................................. 8

9 U.S.C. §§ 1-16 ....................................................................................... 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9 U.S.C. § 2 ............................................................................................................ 1, 8

9 U.S.C. § 3 ............................................................................................................ 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Antholine Fernandez and Ronald Fernandez ("Plaintiffs") assert claims against defendant Bridgecrest Credit Company, LLC ("Bridgecrest") arising from Bridgecrest's alleged conduct pertaining to its repossession of Plaintiffs' vehicle following Plaintiffs' default on their vehicle purchase contract.  Plaintiffs assert that a notice they received from Bridgecrest in connection with the repossession is deficient under California law, includes inaccurate reinstatement and/or redemption amounts with respect to Plaintiffs' loan, and is inconsistent with alleged oral and written representations made by Bridgecrest during the course of the repossession activity.  Plaintiffs assert four claims for violation of various California statutes on their individual behalf, and a fifth claim purportedly on behalf of themselves and the general public for violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.* (the "UCL").

Notwithstanding that Plaintiffs' claims are without merit, those claims are not properly before this Court.  In obtaining a loan for the purchase of their vehicle, Plaintiffs expressly agreed to arbitrate any "disputes" they may have against Bridgecrest "arising from or relating to" their account, including claims regarding vehicle repossession, account servicing, and collection of amounts owed.  As part of their contract with Bridgecrest, Plaintiffs signed an arbitration agreement requiring that they arbitrate their claims in binding individual arbitration.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), mandates that a binding arbitration agreement shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The United States Supreme Court has made absolutely clear that arbitration agreements governed by the FAA must be enforced as written.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) ("The policy

may be debatable but the law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written.").  Here, the arbitration agreement is valid under applicable law, and Plaintiffs' claims are within its scope. Accordingly, the arbitration agreement should be enforced as written, and Plaintiffs' claims must be arbitrated on an individual basis rather than litigated in court.

Plaintiffs' transparent attempt to avoid their contractual obligation to arbitrate, by purportedly seeking "public" injunctive relief under the UCL, is unavailing.  Indeed, district courts in this circuit repeatedly reject a plaintiff's effort to avoid contractual arbitration by characterizing the relief sought as "public" injunctive relief.  *See Sponheim v. Citibank, N.A.*, No. SACV 19-264 JVS (ADSx), 2019 U.S. Dist. LEXIS 100857, at *10-18 (C.D. Cal. June 10, 2019); *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 859 (S.D. Cal. 2019); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 U.S. Dist. LEXIS 167272, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018); *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688, 2017 U.S. Dist. LEXIS 221407, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017).  As in each of those cases, any injunction that might be awarded to Plaintiffs would benefit only a defined and limited group of people, *i.e.*, Bridgecrest customers who have defaulted on their loans and whose vehicles have been, or are in the process of being, repossessed by Bridgecrest.  Because Plaintiffs seek relief on behalf of a narrowly defined segment of Bridgecrest customers rather than the general public, Plaintiffs' request for relief does not constitute public injunctive relief as a matter of law, and the Arbitration Agreement should be enforced with respect to all of Plaintiffs' claims as written.

Because Plaintiffs' Fifth Claim does not even state a facial claim for public injunctive relief under California law, this Court will not need to address Plaintiffs' anticipated reliance on *McGill v. Citibank*, 2 Cal. 5th 945 (2017), and *Blair v. Rent-A-Center, Inc.*, No. 17-17221, 2019 U.S. App. LEXIS 19476 (9th Cir. June 28, 2019).  In *McGill*, the California Supreme Court held that a provision in an

MOTION TO COMPEL ARBITRATION AND STAY ACTION

arbitration agreement precluding the award of public injunctive relief is unenforceable under California law (the "*McGill* Rule").  In *Blair* and two companion cases, *Tillage v. Comcast Corp.*, No. 18-15288, 2019 U.S. App. LEXIS 19496 (9th Cir. June 28, 2019), and *McArdle v. AT&T Mobility, LLC*, No. 17-17246, 2019 U.S. App. LEXIS 19495 (9th Cir. June 28, 2019), the Ninth Circuit held that the FAA does not preempt the *McGill* Rule.

Even in the unlikely event that this Court concludes that Plaintiffs' Fifth Claim states a viable claim for public injunctive relief under California law, it should still compel arbitration of Plaintiffs' individual claims in the First through Fourth Claims, and stay litigation on those Counts pending the completion of arbitration.  Under the FAA, arbitration agreements must be strictly enforced even if the result is that some claims proceed to arbitration while other claims remain in court.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("The relevant federal law [the FAA] *requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis by the Court); *KPMG LLC v. Cocci*, 132 S. Ct. 23, 24 (2011) ("The Act [the FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation .… A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration."); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[t]he [FAA], both through its plain meaning and the strong federal policy it reflects, requires courts to enforce the bargain of the parties to arbitrate, and 'not substitute [its] own views of economy and efficiency' for those of Congress.") (citation omitted).

If this Court addresses the arbitrability of Plaintiffs' Fifth Claim, it will be confronted with the issue of whether the FAA preempts the *McGill* Rule. Importantly, on August 9, 2019, Comcast and AT&T filed petitions for rehearing

MOTION TO COMPEL ARBITRATION AND STAY ACTION

with the Ninth Circuit in the *Tillage* and *McArdle* cases.[1] Request for Judicial Notice ("RJN") Exs. 1, 2. It is anticipated that one or both of those companies will file a petition for a writ of certiorari with the United States Supreme Court if their rehearing petitions are denied, and it is reasonably probable that the Court will grant review given its longstanding interest in FAA preemption issues. Accordingly, if this Court reaches the FAA preemption issue, it should stay Plaintiffs' Fifth Claim pending the final disposition of the Comcast and AT&T appeals, including review by the Supreme Court. This Court has the discretion to stay this case if doing so would "simplify[] . . . questions of law . . . ." *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted).

Such a stay is warranted here. The United States Supreme Court has repeatedly and consistently confirmed that arbitration provisions must be enforced as written, including where the parties have agreed to arbitrate on a bilateral, individual basis. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532 (2012); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA preemption analysis in *Blair* and its companion cases is arguably contrary to Supreme Court precedent. A stay is appropriate to allow time for final resolution of the appeals in *Tillage* and *McArdle*, including potentially before the Supreme Court, allowing the parties (and the Court) to know, with certainty, what law governs the enforceability of Plaintiffs' Fifth Claim under the FAA. Should the Supreme Court review *Blair*, its decision will affect the outcome of this action. In addition, Plaintiffs will not be

---

[1] It appears that the parties in *Blair* have reached a tentative settlement, and the parties have requested a stay of the appeal, so a petition for rehearing has not been filed at the present time.

prejudiced, as their four individual claims will be promptly resolved in arbitration, and a stay will promote judicial efficiency.

Accordingly, Plaintiffs' claims must be arbitrated pursuant to the parties' binding arbitration agreement.  Bridgecrest respectfully requests that the Court enter an order: (1) compelling Plaintiffs to arbitrate all of their claims on an individual basis; and (2) staying this action pending completion of arbitration.  In the alternative, Bridgecrest respectfully requests that the Court enter an order compelling arbitration of the First through Fourth Claims and staying litigation of the Fifth Claim pending final resolution of the appeals in *Tillage* and *McArdle*, including any decision by the Supreme Court.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Account And The Arbitration Agreement

On February 24, 2015, Plaintiffs entered into a Conditional Sale Contract and Security Agreement (the "Contract") with DriveTime Car Sales Company, LLC ("DriveTime"), pursuant to which Plaintiffs purchased a 2008 Scion XB (the "Vehicle") from DriveTime.  *See* Declaration of Paul Beinlich IV ("Beinlich Decl."), ¶ 3, Ex. 1. The Contract was subsequently assigned to Bridgecrest and serviced by Bridgecrest.  *See id.* Decl., ¶¶ 6-7.

At the time of the Vehicle purchase, Plaintiffs also executed an arbitration agreement (the "Arbitration Agreement") that covers disputes arising from or relating to, *inter alia*, the Contract, the Vehicle or the sale of the Vehicle, the collection of amounts owed to DriveTime or its assignees (*i.e.*, Bridgecrest), and/or any repossession of the Vehicle.  *Id.*, ¶ 4, Ex. 2.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

At the very top of the first page, the Arbitration Agreement provides:

**NOTICE OF ARBITRATION AGREEMENT**

Unless you reject this Agreement, this Agreement provides that upon your or our election, all disputes between you and us will be resolved by BINDING ARBITRATION.

If you or we elect arbitration, you will be GIVING UP YOUR RIGHT TO GO TO COURT to assert or defend your rights under the Contract (except for individual claims that may be taken to small claims court).

Your rights will be determined by a **NEUTRAL ARBITRATOR** AND **NOT** by a **JUDGE OR JURY**. **YOU WILL BE WAIVING YOUR RIGHTS TO A JURY TRIAL.**

You are entitled to a **FAIR HEARING**, but arbitration procedures are simpler and more limited than rules that apply in court. **YOU WILL NOT HAVE THE RIGHT TO BE A MEMBER OR REPRESENTATIVE IN A CLASS ACTION OR A PRIVATE ATTORNEY GENERAL ACTION IN COURT OR IN ARBITRATION.**

Arbitrator decisions are enforceable as any court order and are subject to **VERY LIMITED COURT REVIEW.**

**THE ARBITRATION ADMINISTRATOR'S FEES MAY BE MORE THAN THE FEES CHARGED BY A COURT.**

**READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE YOU SIGN.**

*Id.*, Ex. 2, p. 1. In addition, the following notice appears immediately above Plaintiffs' signatures:

> **BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

*Id.*, Ex. 2, p. 5 (bolding in original).

In addition, the Arbitration Agreement expressly defines the meaning of its terms. It defines "Us/We/Our" as "DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the foregoing." *Id.*, Ex. 2, p.1. Further, the Arbitration Agreement defines "claim" as "any claim, dispute or controversy between you and us arising from or related to one or more of the following: (a) The Contract. (b) The vehicle or the sale of the vehicle. . . . (d) The relationships resulting from the Contract. . . . (h) The origination and servicing of the Contract. (i) The collection of amounts you owe us. (j) Any repossession, or replevin, of the vehicle. . . . [and] (l) The rescission or termination of the Contract." *Id.*, Ex. 2, p. 2.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

Per the Arbitration Agreement, the term "Claim" has the "broadest reasonable meaning" and "includes claims of every kind and nature." *Id*.  The Arbitration Agreement's definition of "Claim" explicitly includes "statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts)." *Id*.  The Arbitration Agreement also provides that "[e]ven if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim . . . ." *Id*.  The Arbitration Agreement also explains that, "[b]ecause the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs" the Arbitration Agreement.  *Id.*, Ex. 2, p. 4.

In addition, the Arbitration Agreement afforded Plaintiffs the right to reject it within thirty days of February 24, 2015, the date Plaintiffs entered into the Contract.  *See id.*, Ex. 2, p. 3.  Neither Plaintiff rejected the Arbitration Agreement, (*see id.* ¶ 5), and the Complaint does not allege otherwise.

**B.      The Allegations Of The Complaint**

In the Complaint, Plaintiffs allege that, after purchasing the Vehicle, Plaintiffs defaulted on their payments and, as a result, Bridgecrest repossessed the vehicle on April 10, 2018.  (Compl. ¶ 1-2.)  Plaintiffs allege that, thereafter, Bridgecrest issued a Notice of Intention to Dispose and Our Plan to Sell Property (the "Statutory Notice") to Plaintiffs.  (*Id.*)  Plaintiffs allege that the Statutory Notice is deficient and violates the requirements of Rees-Levering and the Commercial Code.  (*Id.* ¶ 4.)  For example, Plaintiffs allege that the Statutory Notice misstates the reinstatement amount by not disclosing the amount of any regularly scheduled installment payments due during the restatement period, notwithstanding that the Statutory Notice expressly states that Plaintiffs "are not required to pay them to reinstate your account."  (Compl, Ex. 1.)  Plaintiffs also allege that they were orally informed at different times that they could pay amounts different than what was listed in the Statutory Notice in order to reinstate the Contract.  (Compl. ¶¶ 5-6.)  Plaintiffs also allege that the Statutory Notice misstates the location where Plaintiffs' vehicle could

be returned, should they reinstate or redeem the Contract, because while the Statutory Notice listed Las Vegas, Nevada, Plaintiffs were orally informed that their vehicle was available for pick up for a time in Ontario, California.  (Compl. ¶ 4.d.)

Based on the foregoing, Plaintiffs assert claims for violations of California's: (1) Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code § 2981, *et seq.* (the First Claim); (2) Commercial Code, Cal. Comm. Code §§ 9614, 9616 (the Second Claim); (3) Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq.* (the Third Claim); (4) Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785, *et seq.* (the Fourth Claim); and (5) UCL (the Fifth Claim). (Compl. ¶¶ 14-56.)  Plaintiffs assert the First through Fourth Claims on their own individual behalf; the Fifth Claim is purportedly brought on behalf of themselves and the general public.  In connection with the Fifth Claim, Plaintiffs seek a "public injunction as a private attorney general . . . ."  (*Id.* ¶ 55.)  The Fifth Claim is predicated entirely upon the same facts and legal theories underlying each of the First through Fourth Claims  (*Compare id.* ¶¶ 14-47 *with* ¶¶ 48-56.)

## III.   ARGUMENT

### A.   Plaintiffs' Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement.

#### 1.   <u>The Arbitration Agreement Is Valid.</u>

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . "). The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

*See, e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).[2]

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Perry*, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted).

The United States Supreme Court has consistently confirmed that the FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that

---

[2] Here, there is no question that the FAA applies to this dispute because the sale of the Vehicle and related loan under the Contract – both transactions that involve commerce – were made between Plaintiffs, who reside in California (Compl. ¶ 10), and Bridgecrest, an Arizona limited liability company.  Compl. 11; *see also Anderson v. Delta Funding Corp.*, 316 F. Supp. 2d 554, 560 n.1 (N.D. Ohio 2004) ("loan transactions historically have been evaluated under the FAA because of the banking industry's connection to commerce").  In fact, the Arbitration Agreement explicitly states that "the Contract involves a transaction in interstate commerce," such that "the Federal Arbitration Act ("FAA") governs this Agreement."  Beinlich Decl., Ex. 2, p. 4; *see Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 954 (N.D. Ohio 2009) (finding FAA applied because "the Contract itself provides that '[t]he Federal Arbitration Act governs this Arbitration Clause. . . .'"); *Thomas O'Connor & Co. v. Ins. Co. of North America*, 697 F. Supp. 563, 566 (D. Mass. 1988); *see also Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (courts must "'rigorously enforce' [arbitration] agreements according to their terms").  Accordingly, the FAA applies to the Arbitration Agreement.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25-26, 181 L. Ed. 2d 323 (2011) (per curiam) (citations omitted; emphasis in original); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (stating that "courts must 'rigorously enforce' arbitration agreements according to their terms") (citations omitted); *Concepcion*, 563 U.S. at 344 (confirming that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"); *see also Lamps Plus, Inc.*, 139 S. Ct. at 1415 ("The FAA requires courts to 'enforce arbitration agreements according to their terms.'") (citation omitted); *Henry Schein, Inc.*, 139 S. Ct. at 529; *Epic Sys. Corp.*, 138 S. Ct. at 1632; *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012); *see also Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012); *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 960-61 (9th Cir. 2012).

Under the FAA, arbitration must be compelled where, as in this case:  (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement.  *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[3]  The party resisting arbitration bears the

---

[3] The FAA preempts any state law impediments to enforcing arbitration agreements according to their terms, even under the guise of generally applicable contract principles.  *See Concepcion*, 563 U.S. at 350-52 (states may not superimpose judicial procedures on arbitration); *id.* at 341 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA.") (citing *Preston v. Ferrer*, 552 U.S. 346, 353, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010) ("[P]arties are 'generally free to structure their arbitration agreements as they see fit.'"); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (striking down California law that sought to insulate certain issues from arbitration).

MOTION TO COMPEL ARBITRATION AND STAY ACTION

burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue, a burden that cannot be met by Plaintiffs on the facts here. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

Here, there is no dispute that Plaintiffs entered into the Contract and the Arbitration Agreement.  Under the terms of the Arbitration Agreement, Bridgecrest has elected to arbitrate Plaintiffs' claims and to stay the action pending completion of arbitration.  The Arbitration Agreement is a valid agreement to arbitrate under the FAA.  Accordingly, Plaintiffs are bound by its terms.

## 2. <u>Plaintiff's Claims Fall Squarely Within The Arbitration Agreement's Scope.</u>

Where the parties have entered into a binding arbitration agreement, as in the instant case, there is a presumption that any dispute between the parties is arbitrable. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Therefore, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("The standard for demonstrating arbitrability is not high.").  Where the clause is broad, as is the Arbitration Agreement here, there is a heightened presumption of arbitrability such that, "'[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf*

*Navigation Co.*, 363 U.S. 574, 584-85, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)).[4]

Here, the Arbitration Agreement's broad scope covers any possible dispute alleged by Plaintiffs in this case.  The Arbitration Agreement broadly provides for the arbitration of "***any*** claim, dispute or controversy between you [*i.e.*, Plaintiffs] and us [*i.e.*, Bridgecrest] arising from or related to" issues including, without limitation, "the Contract," "the vehicle or the sale of the vehicle," "origination and servicing of the Contract," "advertisements, promotions or oral or written statements related to the Contract," "the financing terms," "collection of amounts you owe us," and "rescission or termination of the Contract."  *See* Beinlich Decl., Ex. 2, p. 2 (emphasis added); *see also id.* (stating that the term "claim" has the "broadest reasonable meaning," and "includes claims of every kind and nature").  Plaintiffs' claims arising from, and relating to, Bridgecrest's attempts to repossess the Vehicle fall squarely within the scope of the Arbitration Agreement and must be arbitrated.[5]

---

[4] *See also Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (holding that the terms such as "any disputes," "all claims," and disputes "arising from my enrollment" are broad in scope); *Simula, Inc.*, 175 F.3d at 721 (holding that "language 'arising in connection with' reaches every dispute between the parties having significant relationship to the contract and all disputes having their origin or genesis in the contract"); *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991), *as amended on denial of reh'g* (Dec. 18, 1991) (noting that "presumption [of arbitrability] is particularly potent if the arbitration clause is broad.") (citation omitted); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

[5] The Arbitration Agreement's plain language extends the right to arbitrate to Bridgecrest.  The Arbitration Agreement defines "Us/We/Our" as "DriveTime, any purchaser, assignee or servicer of the contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the foregoing."  *See* Beinlich Decl., Ex. 2, p. 1.  Bridgecrest is the servicer of the Contract and affiliate of DriveTime.  *See* Beinlich Decl., ¶¶ 2, 6-7 .  Accordingly, Bridgecrest may enforce the Arbitration Agreement.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

### 3. Plaintiffs' Claims Must Be Arbitrated on an Individual Basis.

The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 563 U.S. at 344 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Thus, "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Concepcion*, 563 U.S. at 344 (emphasis omitted) (citations omitted). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *Id.* at 351 (citation omitted); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

Based on the foregoing authority, the Arbitration Agreement should be enforced as written, including the requirement that arbitration take place on an individual basis, and that the arbitrator only award relief on behalf of Plaintiffs. Because the parties have agreed only to individual arbitration and relief on an individual basis, the FAA requires arbitration to proceed on an individual basis.

As discussed, Plaintiffs purport to seek public injunction under the UCL, but that is a transparent attempt to rely upon the *McGill* Rule to avoid their contractual obligation to arbitrate what is actually an individual dispute relating to their default on the Contract and resulting repossession of their vehicle. In *McGill*, the California Supreme Court distinguished between public injunctive relief and non-public injunctive relief, explaining that "public injunctive relief under the UCL . . . is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public," while "[r]elief that has the primary purpose or

MOTION TO COMPEL ARBITRATION AND STAY ACTION

effect of redressing or preventing injury to an individual plaintiff—*or to a group of individuals similarly situated to the plaintiff*—does not constitute public injunctive relief." *McGill*, 2 Cal. 5th at 955 (citation and internal quotations omitted, emphasis added). Despite their conclusory allegations to the contrary, the relief sought by Plaintiffs is not "public" injunctive relief, as it will only benefit, at best, Plaintiffs and other Bridgecrest customers "similarly situated" to Plaintiffs, i.e., customers who have defaulted and are facing, or have faced, repossession of their vehicles.

District courts in this circuit have disregarded a plaintiff's characterization of the relief sought as "public" injunctive relief. For example, in a recent case, plaintiff alleged that he was charged foreign transaction fees there were not authorized by his checking account agreement, and in addition to asserted putative class claims, he sought an order "on behalf of the general public" enjoining defendant from misrepresenting its foreign transaction fee "in its publicly available documents and marketing materials." *Sponheim*, 2019 U.S. Dist. LEXIS 100857, at *3. Judge Selna rejected plaintiff's *McGill* argument and enforced Citibank's arbitration agreement, finding that plaintiff sought relief on behalf of a "limited class: California plaintiffs that have held Citibank checking accounts within the applicable statute of limitations." *Id.* at *14. Put differently, the claims did not arise from "deceptive advertising or marketing to the general public as in *McGill*," but rather the "contractual rights and obligations" between the parties." *Id.*

The decision in *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 859 (S.D. Cal. 2019), is another recent case on point. In *McGovern*, plaintiff asserted claims under the UCL arising from defendant's assessment of overdraft and out-of-network ATMs fees, which purportedly breached the terms of the parties' account agreement. *See id.* After defendant moved to compel arbitration, the district court rejected plaintiff's attempt to avoid arbitration by invoking the *McGill* Rule, finding that plaintiff's "[m]ere[] declar[ation]" that the relief at issue was for the benefit of the general public unavailing. *Id.* Examining the relief sought, the court determined

that it was "merely incidental to [plaintiff's] primary aim of gaining compensation for injury." *Id.*

Other courts have reached similar conclusions. *See Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 U.S. Dist. LEXIS 167272, 2018 WL 4726042, at *6 (C.D. Cal. Sept. 18, 2018) (compelling arbitration because "[m]erely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public injunctive relief," and finding that any injunctive relief would provide "no real benefit to the public at large," since the only individuals who would benefit were other Chase customers); *Rappley v. Portfolio Recovery Assocs., LLC*, No. 17-cv-00108-JGB, 2017 U.S. Dist. LEXIS 144182, 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017) (rejecting attempt to craft "allegations and prayer for relief in a manner that appears to constitute public injunctive relief" under *McGill* because "a closer inspection reveals that the relief she seeks is intended to redress and prevent further injury to a group of plaintiffs who have already been injured."); *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688, 2017 U.S. Dist. LEXIS 221407, 2017 WL 4676580, at *9 (C.D. Cal. June 1, 2017) (distinguishing *McGill* because any public benefit of enjoining defendant from misrepresenting or failing to disclose certain practices is "merely 'incidental'").[6]

Here, as in the foregoing cases, Plaintiffs similarly bring their claims on behalf of a limited, specific group of Bridgecrest customers, seeking relief that

---

[6] *See also Croucier v. Credit One Bank, N.A.*, No. 18-cv-20 MMA (JMA), 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018) (finding *McGill* inapplicable where relief would primarily benefit a class of similarly situated individuals); *Kim v. Tinder, Inc.*, No. 18-cv-03093 JFW (ASx), 2018 WL 6694923, at * 3 (C.D. Cal. July 12, 2018) (finding *McGill* inapplicable and holding that "[a]n injunction that purports to control only the price charged to users of Tinder's dating app who wish to subscribe to Tinder Plus and are age 30 or over is clearly one that would not affect the public at large and, therefore, would only qualify as a private injunction.").

MOTION TO COMPEL ARBITRATION AND STAY ACTION

would primarily benefit Plaintiffs and other Bridgecrest customers who defaulted and were subject to repossession of their vehicles rather than the general public. This includes, for example, an order precluding Bridgecrest from collecting deficiency balances on their customers' accounts (including Plaintiffs') and requiring Bridgecrest to request the deletion of any reporting of such accounts to credit reporting agencies.  Accordingly, Plaintiffs do not seek "public" injunctive relief as a matter of law, and Plaintiffs' UCL claim must be arbitrated on an individual basis.

### B. The Action Should Be Stayed.

#### 1. The Action Should Be Stayed Under Section 3 of the FAA.

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see Collins v. Burlington N. R. Co.*, 867 F.2d 542, 545 (9th Cir. 1989) (remanding case where district court failed to consider whether a stay was appropriate as a result of binding arbitration agreement); *see also Balar Equip. Corp. v. VT Leeboy, Inc.*, 336 F. App'x. 688, 689 (9th Cir. 2009) (reversing decision with instructions to stay action pending completion of arbitration); *see, e.g.*, *Sheffer v. Samsung Telecomms. Am., LLC*¸ No. CV 13-3466-GW AJWX, 2014 WL 792124, *1 (C.D. Cal. Feb. 6, 2014) (dismissing class claims with prejudice since arbitration agreement required individual arbitration of all claims, but staying "[a]ll proceedings" in action pending completion of individual arbitration).  Because the claims are subject to individual arbitration, as discussed, this action should be stayed pending completion of arbitration.

MOTION TO COMPEL ARBITRATION AND STAY ACTION

2. **If This Court Reaches the FAA Preemption Issue Posed by Plaintiffs' Fifth Claim, It Should Apply A Discretionary Stay Of The Fifth Claim Pending Completion Of Appeals In _Tillage_ And _McArdle_.**

Finally, in the unlikely event that the Court reaches the issue of whether the FAA preempts the _McGill_ Rule, the Court should apply a discretionary stay of the case pending final resolution of the appeals in _McArdle_ and _Tillage_, including any review by the Supreme Court. The Court has discretion to stay this case if doing so would "simplify[] . . . questions of law." _Lockyer v. Mirant Corp._, 398 F.3d 1098, 1110 (9th Cir. 2005). In deciding whether to stay a case, the Ninth Circuit adheres to the following framework:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof and questions of law which could be expected to result from a stay.

_Lockyer_, 398 F.3d at 1110 (citing _CMAX Inc. v. Hall_, 300 F. 2d 265, 268 (9th Cir. 1962)).

Here, a stay is warranted. While Bridgecrest recognizes that _Blair_ is precedent in this circuit, the FAA preemption analysis in _Blair_ is arguably contrary to Supreme Court precedent, requiring that arbitration provisions be enforced as written, including where the parties have agreed to arbitrate on a bilateral, individual basis. _See Blair_, 2019 U.S. App. LEXIS 19476, at *10-25 (distinguishing prior United States Supreme Court cases, including _Epic Sys. Corp. v. Lewis_, 138 S. Ct. 1612 (2018), and _AT&T Mobility LLC v. Concepcion_, 563 U.S. 333, 336 (2011)).

To date, the Ninth Circuit has not issued a mandate in _Tillage_ or _McArdle_,

MOTION TO COMPEL ARBITRATION AND STAY ACTION

and appellants filed their petitions for rehearing on August 9, 2019.  RJN Exs. 1, 2.
It is anticipated that if the Ninth Circuit denies the petitions for rehearing, appellants
will file petitions for a writ of certiorari with the United States Supreme Court, and
it is reasonably probable that the Court will grant review given its longstanding
interest in FAA preemption questions.  Given that review by the Supreme Court will
directly affect the outcome of this case, a stay pending resolution of final appeals in
*Tillage* or *McArdle*, including before the Supreme Court, is appropriate.  If a stay is
not issued, the Court risks unnecessarily devoting judicial (and party) resources to
the resolution of an issue that may be mooted by a subsequent decision by the *en
banc* Ninth Circuit or the Supreme Court.  The parties also similarly face substantial
uncertainty in proceeding with the case, including discovery, that could later prove
unnecessary.  In contrast, allowing *Tillage* and *McArdle* to proceed to a final
determination would simplify the issues, because the parties would then know, with
certainty, what law governs.  A stay will not prejudice Plaintiffs, since their four
individual Claims will be promptly arbitrated and it is their position that the Fifth
Claim is intended to benefit the general public, not them.  Hence, the parties can
resolve their individual dispute in arbitration as they contractually agreed, and return
to this Court for resolution of the Fifth Claim after completion of the arbitration and
the appeals in *Tillage* and *McArdle*.

**IV.    CONCLUSION**

For the foregoing reasons, Bridgecrest respectfully requests that the Court grant the Motion and compel arbitration of Plaintiffs' individual claims in accordance with the express terms of the valid and enforceable Arbitration Agreement.  In the alternative, should the Court reach the issue of whether the FAA preempts the *McGill* Rule, Bridgecrest requests that Plaintiffs be compelled to arbitrate their four individual claims and that the Court apply a discretionary stay as to the Fifth Claim pending a final determination of the appeals in *Tillage* and *McArdle*, including before the Supreme Court.

DATED:  August 19, 2019

BALLARD SPAHR LLP
MARCOS D. SASSO

BY:    */s/ Marcos D. Sasso*
Marcos D. Sasso

Attorneys for Defendant,
BRIDGECREST CREDIT
COMPANY, LLC