UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** EDCV 19-877-MWF-SHK                **Date:  October 29, 2019**
Title:     Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**   ORDER RE: DEFENDANT BRIDGECREST
CREDIT COMPANY, LLC'S MOTION TO
COMPEL ARBITRATION [13]

        Before the Court is Defendant Bridgecrest Credit Company, LLC's
("Bridgecrest") Motion to Compel Arbitration (the "Motion"), filed on August 19,
2019.  (Docket No. 13).  Plaintiffs Antholine Fernandez and Ronald Fernandez filed an
Opposition on September 9, 2019.  (Docket No. 15).  Bridgecrest filed a Reply on
September 16, 2019.  (Docket No. 16).

        The Motion was noticed to be heard on September 30, 2019.  The Court read
and considered the papers on the Motion and deemed the matter appropriate for
decision without oral argument.  *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.  The
hearing was therefore **VACATED** and removed from the Court's calendar.

        For the reasons discussed below, the Motion is **DENIED**.  Plaintiffs are seeking
a public injunction, because at least part of the injunctive relief they are seeking does
not benefit them directly, is aimed at future events and not past harms, and seeks to
prevent injury towards the general public.  Because Plaintiffs are seeking a public
injunction, the "poison pill" clause in the parties' arbitration agreement (the
"Agreement") is triggered, rendering the Agreement null and void.  Finally,
Bridgecrest's stated basis for a stay is far too speculative as it relies on two appeals
which are still several steps removed from the Supreme Court's review.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. EDCV 19-877-MWF-SHK            Date: October 29, 2019
Title:     Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

## I.    BACKGROUND

Plaintiffs commenced this action in the Los Angeles County Superior Court on April 4, 2019.  (Complaint (Docket No. 1-1)).  On May 9, 2019, Defendant timely removed this action, invoking the Court's diversity jurisdiction.  (Notice of Removal ("NoR") ¶¶ 2-11 (Docket No. 1)).

### A.    Plaintiffs' Claims

The Complaint contains the following allegations:

Plaintiffs are residents of San Bernardino County, and Plaintiff Ronald Fernandez is and has been a "disabled person" as defined in California Civil Code § 1761(g).  (Complaint ¶ 10).  Bridgecrest is an Arizona limited liability company engaged in the business of providing financing to purchasers of motor vehicles under conditional sales contracts and/or servicing such contracts.  (*Id.* ¶ 11).  In February 2015, Plaintiffs purchased a used 2008 Scion xB for personal, family, or household purposes from a car dealership in Montclair, California pursuant to a conditional sale contract, as defined and regulated by the Rees-Levering Automobile Sales Finance Act under California Civil Code §§ 2981, *et seq*. ("RLA").  (*Id.* ¶ 1).

The RLA imposes mandatory and strict requirements upon holders of contracts following repossession or voluntary surrender of vehicles.  (*Id.* ¶ 3).  In particular, the RLA requires the seller or holder to issue a detailed written notice of intention to dispose of a vehicle to a buyer following repossession or surrender of his or her vehicle.  (*Id.*).  In addition, California Civil Code § 2983.2 specifies the precise information and disclosures that must be included in the notice so that the notice complies with the law.  (*Id.*).  Absent strict compliance, a seller or holder of a conditional sale contract may not collect a deficiency from any person liable under a contract following disposition of a repossessed or surrendered vehicle.  (*Id.*).

The dealership assigned Plaintiffs' contract to Bridgecrest (*Id.* ¶ 1).  On April 10, 2018, Bridgecrest repossessed Plaintiffs' vehicle based on an alleged payment default under their contract.  (*Id.* ¶ 2).  Thereafter, Bridgecrest issued to Plaintiffs a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:       Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

Notice of Intention to Dispose and Our Plan to Sell Property (the "Statutory Notice").
(*Id.*).  The Statutory Notice was defective and violated the RLA and Division 9 of the
California Commercial Code in the following ways:

- The Statutory Notice failed to disclose the scheduled installment
  payments coming due during the reinstatement period, in violation of
  Civil Code § 2983.2(a)(2);

- The Statutory Notice falsely stated that Plaintiffs had to pay
  approximately $1,200 in "unpaid interest," even though when default is
  the result of the buyer's failure to make payments due under the contract,
  the seller or holder of the contract can require the buyer only to make the
  defaulted payments and pay any applicable delinquency charges in order
  to reinstate the contract, not interest, in violation of Civil Code
  §§ 2983.2(a)(2) and 2983.3(d);

- The Statutory Notice did not include the proper form for requesting an
  extension of the reinstatement and redemption periods, and failed to
  designate a physical address where the written request for an extension
  could be personally served, in violation of Civil Code § 2983.2(a)(3);

- The Statutory Notice failed to disclose the place at which Plaintiffs'
  vehicle would have been returned to them, had they reinstated the contract
  or redeemed the vehicle prior to its transfer to the auto auction, in
  violation of Civil Code section 2983.2(a)(4);

- The Statutory Notice failed to provide the address for payment of the
  mandatory law enforcement fee Plaintiffs had to pay in order to obtain
  possession of their vehicle after reinstatement or redemption, in violation
  of Civil Code section 2983.2(a)(5);

- The Statutory Notice failed to disclose the name and address for Eagle
  Adjusters and the storage fees or chargers Plaintiffs had to pay Eagle

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

> Adjusters if Plaintiffs reinstated their contract or redeemed the vehicle
> while it was in Eagle Adjusters' possession, in violation of Civil Code
> sections 2983.2(a)(1), (a)(2) and (a)(5);
>
> • The Statutory Notice failed to disclose that Plaintiffs would have to pay
>   fees for the transfer of their vehicle to auction, including the accrual date,
>   amount, and payee of those fees, in violation of Civil Code sections
>   2983.2(a)(1), (a)(2) and (a)(5); and
>
> • The Statutory Notice failed to describe the secured party, in violation of
>   Commercial Code § 9614.

(Complaint ¶ 4).  After the repossession, Plaintiff Antholine Fernandez spoke by
telephone several times with Bridgecrest and was told, as late as April 16, 2018, that
Plaintiffs could pay $1,501 by April 18, 2018 to reinstate their contract, and that after
paying Plaintiffs could obtain possession of their vehicle at Eagle Adjusters in Ontario.
(*Id.* ¶ 5).  Following this advice, on April 17, 2018, Antholine called Eagle Recovery to
confirm that Plaintiffs would be retrieving their vehicle the following day after paying
the reinstatement to Bridgecrest, only to be told that Plaintiffs' vehicle had already
been transferred to another location for auction.  (*Id.*).

After speaking with Eagle Recovery on April 17, 2018, Antholine called
Bridgecrest and was told by a supervisor that the reinstatement amount had increased
to $1,849 plus $410 in transfer fees, and that Plaintiffs would have to pick up their
vehicle in Las Vegas, Nevada, where the auction was located, at their own expense.
(*Id.* ¶ 6).  Plaintiffs could not afford to pay the reinstatement amount and the costs of
travel to Las Vegas to retrieve their vehicle, and their vehicle was thereafter sold at
auction in Las Vegas.  (*Id.*).

On or about May 9, 2018, after the auction sale of Plaintiffs' vehicle,
Bridgecrest issued a Calculation of Surplus or Deficiency ("Calculation") to Plaintiffs,
which violated California Commercial Code § 9616 in that it failed to state (1) the
amount and types of all expenses for retaking, holding, preparing for disposition,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

processing, and disposing of the collateral, and (2) the amounts and types of all credits to which Plaintiffs were known to be entitled.  (*Id.* ¶ 7).  The Calculation demanded that Plaintiffs pay a deficiency balance of $12,379.29.  (*Id.* ¶ 8).  To make matters worse, on information and belief, Plaintiffs allege that Bridgecrest has falsely reported to credit reporting agencies that Plaintiffs owe a deficiency balance of at least that amount, when Plaintiffs do not owe that amount because of Bridgecrest's defective Statutory Notice.  (*Id.*).

Finally, on information and belief, Plaintiffs allege that many of these Bridgecrest practices are common for California consumers.  Specifically, Plaintiffs allege that the Statutory Notice is a standard form notice which Bridgecrest has issued to members of the general public of California within the last four years.  (*Id.* ¶ 9).  Plaintiffs further allege on information and belief that as a general business practice Bridgecrest has been transferring repossessed or surrendered vehicles of California consumers to Las Vegas for auction sale, which effectively deprives consumers of their statutory rights of reinstatement or redemption, because traveling long distance to reclaim a repossessed vehicle in Las Vegas is too time consuming and/or cost prohibitive for California consumers.  (*Id.*).  And Plaintiffs allege on information and belief that Bridgecrest has falsely reported alleged deficiency balances of members of the general public to credit reporting agencies as past debts, even though Bridgecrest knew or should have known that collection of such amounts is unlawful due to defective notices.  (*Id.*).

Accordingly, Plaintiffs bring this case in their capacity as private attorney generals, to obtain a public injunction enjoining Bridgecrest from:

- collecting or attempting to collect any deficiency balances from the Bridgecrest borrowers who were issued a defective Statutory Notice,

- making any credit reporting of a deficiency balance on the accounts of the affected California customers of Bridgecrest, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:       Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

- transferring vehicles repossessed or surrendered in California to Las Vegas, Nevada for auction sale, unless Bridgecrest undertakes the expense of redelivering vehicles back to California for those customers who reinstate their contracts or redeem their vehicles.

(*Id*.).  Based on these allegations, Plaintiffs assert five claims: (1) violations of the RLA, (2) violations of the California Commercial Code, (3) violations of the Rosenthal Fair Debt Collection Practices Act, (4) Violations of the Consumer Credit Reporting Agencies Act under California Civil Code § 1785.25(a), and (5) violations of California's Unfair Competition Law ("UCL").  (*Id*. ¶¶ 14-56).

### B.     The Agreement

The sales contract signed by Plaintiffs also contained the Agreement. (Declaration of Paul Beinlich IV, Exhibit 2) (Docket No. 13-3).  As relevant to this dispute, the Agreement covered "all disputes" except "for individual claims that may be taken to small claims court."  (*Id*. at 10).  Specifically, under a paragraph labeled "No Class Actions or Private Attorney General Action," the Agreement stated that "if you or we elect to arbitrate a Claim, neither you nor we will have the right to . . . act as a private attorney general in court or in arbitration . . . and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding."  (*Id*. at 12).

Finally, under the paragraph labeled "Miscellaneous," the agreement provides that "if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.  (*Id*. at 13).

## II.   LEGAL STANDARD

"One of the threads running through federal arbitration jurisprudence is the notion that arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [one] has not agreed so to submit."  *Textile Unlimited,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

*Inc. v. A.BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001) (internal quotations and citation omitted).  The FAA states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Accordingly, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

In California, "'[t]he party seeking arbitration bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.'"  *Galvan v. Michael Kors USA Holdings, Inc., et al.*, 2017 WL 253985, at *3 (C.D. Cal. Jan. 19, 2017); *see Socoloff v. LRN Corp.*, 646 Fed. App'x 538, 539 (9th Cir. 2016); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).

## III.   REQUEST FOR JUDICIAL NOTICE

In conjunction with the Motion, Defendant requests that the Court take judicial notice of two petitions for rehearing filed in the United States Court of Appeals for the Ninth Circuit.  (*See* Request for Judicial Notice ("RJN") (Docket No. 14)).  The Court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

The Court concludes that the requested documents are official public records.  Accordingly, the Court **GRANTS** the RJN.

## IV.   MOTION TO COMPEL ARBITRATION

### A.   Discussion

Here, the parties do not dispute that Plaintiffs entered into the Agreement in 2015 and that the Agreement covers all of Plaintiffs' claims.  (*See* Motion at 5-7).  The parties also do not dispute that, if Plaintiffs are seeking public injunctive relief, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

Agreement would prohibit them from seeking that relief in arbitration or in court.
Instead, the parties dispute four issues: (1) whether Plaintiffs' UCL claim is properly
plead such that Plaintiffs have sufficiently alleged a request for a public injunction
under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ("*McGill*"); (2) if Plaintiffs have
properly alleged a claim for a public injunction, whether *McGill* is preempted under
the Federal Arbitration Act ("FAA"); (3) if Plaintiffs have properly alleged a claim for
a public injunction, whether the rest of the Agreement can be enforced; and (4) if
Plaintiffs have properly alleged a claim for a public injunction, whether the Court
should stay this action pending potential guidance on these issues from the Ninth
Circuit and Supreme Court.  The Court will address each issue in turn.

## B.      Plaintiffs Seek a Public Injunction Under the UCL and *McGill*

First, Defendant argues that while Plaintiffs "purport to seek public injunction
under the UCL . . . that is a transparent attempt to rely on the *McGill* Rule to avoid
their contractual obligation to arbitrate what is actually an individual dispute relating to
their default." (Motion at 13).  Defendant argues that the *McGill* rule should only
apply when a plaintiff is seeking relief "that has the primary purpose and effect of
prohibiting unlawful acts that threaten future injury to the general public," as opposed
to relief that will only effect "a group of individuals similarly situated to the plaintiff."
(*Id*. at 13-14) (citing *McGill*, 2 Cal. 5th at 955).  In this instance, Defendant argues that
Plaintiffs are really seeking relief that will benefit "at best, Plaintiffs and other
Bridgecrest customers 'similarly situated' to Plaintiffs, i.e., customers who have
defaulted and are facing, or have faced, repossession of their vehicles."  (*Id*. at 14).
Defendant points to several cases which it argues forecloses Plaintiffs' argument
because in those cases, like here, the plaintiffs sought relief only on behalf of people
similarly situated and not the public at large.  (*Id*. at 14-15).

In opposition, Plaintiffs make two main points.  First, Plaintiffs argue that
"whether [P]laintiffs actually allege a claim for public injunctive relief is irrelevant,"
because "[a]pplying the plain language of the agreement, it is null and void."
(Opposition at 9).  In other words, because the Agreement, by its terms, could ***never***
permit public injunctive relief in any forum, it does not matter whether Plaintiffs ***here***

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:       Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

are seeking public injunctive relief.  (*Id*.).  Second, Plaintiffs argue that they have in fact alleged a claim for public injunctive relief, which the *McGill* court defined as "relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."  (*Id*.) (citing *McGill*, 2 Cal. 5th at 955).  This is contrasted with private injunctive relief, which is "relief that primarily resolves a private dispute between parties and rectifies individual wrongs and that benefits the public, if at all, only incidentally."  (*Id*.).  Plaintiffs also point to a case which determined that a "request to enjoin a defendant from violating the post-repossession notice requirements of the" RLA – the same relief sought by plaintiffs here – constituted a claim for public injunctive relief under the UCL.  (*Id*. at 11) (citing *Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C-09-04978 SBA, 2010 WL 3619851 (N.D. Cal. Sept. 13, 2010).

The Court agrees with Plaintiffs.  As a preliminary matter, the Court is not convinced by Plaintiffs' facial attack on the Agreement.  If Plaintiffs' logic were correct, presumably ***every*** arbitration clause that facially prohibited public injunctions would be invalid post-*McGill*, and Plaintiffs do not explain how that can be the law when scores of cases analyze whether the injunctive relief at issue was public or private before turning to the *McGill* rule.  *See, e.g., Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 824 (9th Cir. 2019) ("*Blair*") (determining whether the case involved "a private [or] public injunction" before applying the *McGill* rule).

That being said, the Court agrees with Plaintiffs that the injunction they are seeking here is at least in part a public injunction.  Plaintiffs seek to enjoin Bridgecrest from (1) collecting deficiency balances from borrowers who were issued a defective Statutory Notice, (2) making credit reporting of deficiency balance on the accounts of affected California customers, and (3) transferring vehicles repossessed or surrendered in California to Las Vegas.  (Complaint ¶ 9).  The first request could be seen as primarily benefitting Plaintiffs, while the second request could help both Plaintiffs and the public at large, as it is unclear what impact the requested injunction would have on Plaintiffs' credit scores.  The third request, though, cannot benefit Plaintiffs in any way, and therefore has "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" as opposed to relief that "primarily

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:       Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

resolves a private dispute between parties" and "rectifies individual wrongs." *McGill*, 2 Cal. 5th at 955 (internal quotations omitted).

The Court acknowledges that there is a difference of opinion among district courts in the Ninth Circuit as to what constitutes "public injunctive relief" when the relief requested is neither redressing a private dispute nor aimed at false advertisements aimed broadly at consumers.  However, after analyzing the cases cited by the parties, the Court determines that Plaintiffs have the better argument.  First, the Court notes that the only case cited by the parties which addresses the issue here – a UCL claim seeking to enjoin an alleged violation of the RLA – determined that the injunctive relief sought was a public injunction.  *See Cardenas v. AmeriCredit Fin. Servs. Inc.*, No. C 09-04978 SBA, 2010 WL 3619851, at *9 (N.D. Cal. Sept. 13, 2010) ("[I]t is evident that the relief being sought is not limited to Plaintiffs individually, but rather, extends to members of the public impacted by [defendant]'s allegedly unfair business practices" of "issuing "defective" notices to consumers which "fail to accurately inform consumers of their legal rights and obligations.").

Second, the cases cited by Defendant largely dealt with claims (1) arising out of breaches of contract, (2) which only dealt with past harms, or (3) which stated public injunctive relief that was too vague, none of which apply here.  *See, e.g., Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1061 (9th Cir. 2013) (because defendant "had completely withdrawn from the private school loan business" the "injunctive relief sought . . . for all practical purposes, relates only to past harms suffered by the members of the limited putative class"); *Sponheim v. Citibank, N.A.*, No. SA CV-19-264-JVS-ADSX, 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) ("At bottom, [plaintiff]'s claims arise from alleged breaches of bilateral contracts between [defendant] and its California account holders, and those account holders' prayers for monetary relief are at the 'heart' of [plaintiff]'s claims."); *but see Rappley v. Portfolio Recovery Assocs., LLC*, 2017 WL 3835259 at *5 (C.D. Cal. Aug. 24, 2017).

Finally, the Court does not necessarily agree with Bridgecrest's characterization that this will only impact "Bridgecrest customers," because of the unique relationship between consumers and car loan lenders.  Many customers, like Plaintiffs here, may

CIVIL MINUTES—GENERAL                                                        10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

not even be aware that they are in a contractual relationship with Bridgecrest until after they have defaulted on their loans, and they are certainly not aware when they initially take out their loans, because car dealerships re-assign loans to new companies.  That is likely why California requires such specificity under the RLA in these circumstances because any consumer who finances a car could have their loans assigned to Bridgecrest.  Unlike the cases cited by Defendant, Plaintiffs (and those who would benefit from this injunction) may not have chosen to "enter into contractual relationships" with Bridgecrest.

Accordingly, Plaintiffs' request for injunctive relief, which does not arise out of a breach of contract allegation, is not vague, is addressed at future harm, and that at least in part could in no way benefit Plaintiffs, is properly considered a public injunction.

### C.     *McGill* is Not Preempted by the FAA

Second, to the extent Defendant argues that *McGill* is preempted by the FAA, this argument fails.  As Defendant concedes, "*Blair* is precedent in this circuit." (Motion at 17).  In *Blair*, the Ninth Circuit held "that the FAA does not preempt the *McGill* rule."  *Blair*, 928 F.3d at 831.

Accordingly, Plaintiffs' Fifth Claim is not subject to arbitration, and the section of the Agreement limiting Plaintiffs' rights to seek public injunctive relief under the UCL is null and void.

### D.     The Agreement is Null and Void

In opposition, Plaintiffs next argue that the entire Agreement is null and void because a "poison pill" in the Agreement has been triggered as a result of Plaintiffs seeking public injunctive relief.  Specifically, Plaintiffs point to the paragraph of the Agreement which states:

[I]f a court limits or voids any part of the paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

Agreement (except for this sentence) shall be null and void with respect to such
proceeding, subject to the right to appeal such limitation or voiding.

(Opposition at 7) (citing Agreement at 13).  Plaintiffs argue that if this Court
determines that they are seeking a public injunction under the UCL, the "Court must
void the part of the 'No Class Actions or Private Attorney General Actions' paragraph
which waives [P]laintiffs' right to seek public injunctive relief under the UCL.  (*Id*. at
7).  Plaintiffs then argue that the plain language of this paragraph therefore indicates
that the ***entire Agreement*** is null and void, and cites several cases that have similarly
voided arbitration agreements which contained poison pill sections upon determining
that the plaintiff was seeking a public injunction.  (*Id*. at 7-8) (citing case law).

        In reply, Defendant makes two arguments.  First, Defendant repeats its argument
that "there is no basis for assuming or concluding that any part of the 'No Class
Actions or Private Attorney General Actions' section will be limited or voided"
because Plaintiffs "fail to state a viable claim for public injunctive relief in the first
instance."  (Reply at 7).  Second, Defendant argues that "Plaintiffs disregard that any
such nullification or voiding of the Agreement is 'subject to' an appeal of the Court's
determination," which Defendant argues means that any "voiding or nullification . . . is
***contingent upon*** the results of an appeal."  (*Id*.) (emphasis in the original).  Defendant
cites to Merriam-Webster, the Black's Law Dictionary, and California law to support
its contention that this clause was only meant to be triggered after an unsuccessful
appeal.  (*Id*. at 7-8).

        The Court agrees with Plaintiffs.  First, as discussed above, the Court has
determined that Plaintiffs have stated a claim for public injunctive relief, thereby
triggering the "poison pill" provision of the Agreement.  Accordingly, the only
question at issue is whether the "subject to" language should be interpreted to void the
Agreement only after an unsuccessful appeal.  While Defendant is correct that the
cases Plaintiffs cite do not contain similar "subject to" language, the Court does not
agree that "subject to the right to appeal" ***necessarily*** means that this clause is only
meant to apply after exercising a right to appeal.  Instead, the Court determines that the
clause could indicate that Defendant was ***reserving*** its right to appeal the nullification

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

decision.  The Court is not willing to accept Defendant's unilateral definition as to
what this clause meant.

For these reasons, the Court concludes that the "poison pill" section of the
Agreement renders the Agreement null and void.

### E.      The Court Will Not Stay this Case

Finally, Defendant argues that in the "unlikely event" that the Court reaches the
*McGill* issue, Defendant urges the Court to "apply a discretionary stay of the case
pending final resolution" of several appeals, "including any review by the Supreme
Court." (Motion at 17).  Defendant bases that request on the Court's inherent
discretion to stay a case "if doing so would simplify questions of law." (*Id*.) (citing
*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).  Defendant recognizes
that *Blair* "is precedent in this circuit" but believes that "the FAA preemption analysis
in *Blair* is arguably contrary to Supreme Court precedent." (*Id*.).  Defendant argues
that there are two current appeals to the Ninth Circuit directly relating to this issue
where it is "***anticipated*** that ***if*** the Ninth Circuit denies the petitions for rehearing,
appellants will file petitions for a writ of certiorari with the United States Supreme
Court, and it is ***reasonably probable*** that the Court will grant review given its
***longstanding interests*** in FAA preemption questions." (*Id*. at 18) (emphasis added).
Defendant says that given this posture, the "Court risks unnecessarily devoting judicial
(and party) resources to the resolution of an issue that may be mooted by a subsequent
decision" if a stay is not issued. (*Id*.).  Finally, Defendants argue that a stay "will not
prejudice Plaintiffs, since . . . it is their position that the Fifth Claim is intended to
benefit the general public, not them." (*Id*.).

In opposition, Plaintiffs argue that the Court should not exercise its discretion to
stay this case, because doing so is "a disfavored and exceptional step." (Opposition at
16) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).  Plaintiffs note that
Defendant has the burden to prove why a stay is appropriate, but it cannot do so for
several reasons. (*Id*. at 16-17).  First, Plaintiffs argue that there is no "unresolved
independent proceeding which bears upon this case," and district courts do not have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  EDCV 19-877-MWF-SHK                    Date:  October 29, 2019
Title:       Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

the discretion to ignore binding Ninth Circuit precedent on the off chance the Supreme Court might overturn it.  (*Id*. at 17).  Second, Plaintiffs argue that the requested stay is of indeterminate duration, which "violates Ninth Circuit precedent that a discretionary stay cannot be indefinite in nature."  (*Id*.).  Finally, Plaintiffs argue that the requested stay is improper under the *Landis* balancing test, and point out that the stay could harm "the many California consumers Bridgecrest undoubtedly will continue to prey on."  (*Id*. at 18-19).

The Court agrees with Plaintiffs.  It is "well-established that the decision to stay a case is committed to the sound discretion of the Court, as part of the Court's inherent authority to manage its caseload."  *AmTrust Int'l Underwriters Ltd. v. Silver Star Constr. Eng'g, Inc.*, No. CV-18-4776-MWF-JEMX, 2018 WL 5819454, at *4 (C.D. Cal. Oct. 30, 2018) (Fitzgerald, J.).  The burden is on Bridgecrest as the moving party to show that a stay is appropriate.  *Id*. (citing *Landis*, 299 U.S. at 255-66).  Here, Bridgecrest argues that if the Ninth Circuit denies the petitions for rehearing, and if appellants file a writ of certiorari, it would be "reasonably probable" the Court may take up review.

This is far too attenuated to support a stay.  *See, e.g.*, *Daugherty v. SolarCity Corp.*, No. C 16-05155 WHA, 2017 WL 386253, at *4 (N.D. Cal. Jan. 26, 2017) ("A decision [by the Supreme Court] in *Morris* remains many months, perhaps even more than a year away. Given the extent of that possible delay, a stay is not warranted, particularly because much of the discovery in this action would be useful both here and in any eventual arbitration."); *Citizens in Charge, Inc. v. Husted*, No. 2:13-CV-935, 2013 WL 11310689, at *11 (S.D. Ohio Nov. 13, 2013) ("Nevertheless, the degree of that potential is speculative at this point because the [Supreme] Court has not yet granted certiorari."); *Reed v. Autonation, Inc.*, No. CV-16-08916-BRO-AGRX, 2017 WL 10592157, at *5 (C.D. Cal. Mar. 6, 2017) (Until the Supreme Court decides a pending case, "we must respect the holdings of our court of appeals.").

Indeed, the cases in which a stay was granted based on pending appellate decisions involve far more certainty than what is argued here.  *See, e.g.*, *Robledo v. Randstad US, L.P.*, No. 17-CV-01003-BLF, 2017 WL 4934205, at *3 (N.D. Cal. Nov.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  EDCV 19-877-MWF-SHK**                    **Date:  October 29, 2019**
Title:      Antholine Fernandez et al v. Bridgecrest Credit Company, LLC

1, 2017) ("The Supreme Court's decision in *Morris* is not a speculative future event involving multiple contingencies before it comes to fruition" because "[c]ertiorari was granted and the case has already been fully briefed and argued" and "[t]he only event that the Parties and the Court are waiting for is the decision itself.").  The Court further agrees that the potential harm felt to California consumers should Bridgecrest's alleged practices be allowed to continue outweighs any slight benefit gained by a stay.

Accordingly, the Motion and Defendant's request for a stay are **DENIED.**

IT IS SO ORDERED.